UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ANTHONY DINGLE,

              Plaintiff,

   - against -

THE CITY OF NEW YORK, THE NEW
YORK CITY HOUSING AUTHORITY, and
DEMETRICE GADSON,

           Defendants.
-------------------------------------------------------X

**OPINION AND ORDER**

**10 Civ. 4 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Anthony Dingle brought suit, pursuant to 42 U.S.C. § 1983, against

the City of New York (the "City"), the New York City Housing Authority

("NYCHA" or the "Authority"), and Demetrice Gadson alleging, *inter alia*,

retaliation in violation of the First Amendment of the United States Constitution

for having complained of matters of public concern. Dingle also claimed that he

was deprived of his fundamental liberty rights without due process of law in

violation of the Fourteenth Amendment. In December of 2011, a jury trial was

held and concluded with an award of $1.00 in nominal damages to plaintiff.

Plaintiff now moves for an award of attorneys' fees and costs pursuant to 42

U.S.C. § 1988.  For the following reasons, that portion of plaintiff's motion seeking attorneys' fees is denied while the portion seeking costs is granted.

## II.      BACKGROUND

### A.      The Underlying Litigation

In 1990, plaintiff began working for the NYCHA which provides public housing to thousands of low income tenants in New York City.  Plaintiff was promoted to the position of Superintendent in 2004.  In 2006, plaintiff began reporting to Gadson who was and is a Deputy Director in the Authority's Manhattan Management Department.  In early 2007, plaintiff was assigned to a NYCHA development known as the Polo Grounds Towers (the "Polo Grounds") where he continued to report to Gadson.  Upon returning from his leave of absence in September 2010, plaintiff was laterally transferred to a different NYCHA development where he no longer reports to Gadson.

Beginning in June 2007, and continuing until May 2009, plaintiff repeatedly began complaining about, *inter alia*, the understaffing problems at the Polo Grounds.  Plaintiff made these complaints to Gadson and her supervisors, his Union, and the New York City Employee Assistance Program ("NYC EAP").  As a result of these complaints, Gadson issued, or ordered to be issued, six Counseling Memoranda to plaintiff (June 15, 2009, July 8, 2009, July 13, 2009, August 26,

2009, November 12, 2009, and November 20, 2009).  A Counseling Memorandum is a form of formal disciplinary action used by the NYCHA.  As further and more serious disciplinary action, Gadson served plaintiff with two Notices of Local Hearing/Specification of Charges (the "Notices of Hearing" or "Notices") (July 2, 2009 and February 2, 2010).

Plaintiff sought redress for Gadson's alleged retaliation.  In his Complaint, Dingle sought the following relief:

1.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

2.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned laws protected by the United States Constitution as well as New York State;

3.    Advancement for Plaintiff who has lost position as a result of the Defendants['] illegal conduct;

4.    A transfer to an Authority building i[n] the Bronx area so as to better accommodate Mr. Dingle's care o[f] his disabled son;

5.    Granting an order restraining Defendants from any retaliation against any Plaintiff for participation is any form in this litigation;

6.    All damages which Plaintiff has sustained as a result of Defendants' conduct, including back pay, front pay, punitive damages, general and special damages for lost compensation and job benefits he would have received but for Defendants' conduct, and for emotional distress, humiliation, embarrassment,

foreclosure of liberty and anguish;

7.    Removal from Mr. Dingle's Personnel File of all Counseling Memoranda, disciplinary write-ups, false accusations, and any and all other documents that were spuriously filed based on Gadson's retaliatory victimization of Mr. Dingle;

8.    Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless and/or intentional conduct;

9.    Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

10.   Pre-judgment and post-judgment interest, as provided by law; and

11.   Granting Plaintiff other and further relief as this Court finds necessary and proper.[1]

On February 4, 2010, plaintiff voluntarily withdrew his claims against the City. The remaining two defendants subsequently moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In an Opinion and Order dated July 28, 2010, defendants' motion was granted in part and denied in part.[2] Plaintiff's due process deprivation of liberty interest claim against both defendants and the First Amendment retaliation claim against the NYCHA were

---

[1]    Complaint, Wherefore Clause, ¶¶ 1-11.

[2]    *See Dingle v. City of New York,* 728 F. Supp. 2d 332 (S.D.N.Y. 2010).

4

dismissed.[3]  Plaintiff was permitted to proceed on his First Amendment retaliation

claim against Gadson in her individual capacity.[4]

Gadson then filed a motion for summary judgment which was granted

in part and denied in part in an Opinion and Order dated July 7, 2011.[5]  This Court

dismissed plaintiff's First Amendment retaliation claim to the extent that it was

based upon plaintiff's complaints to his supervisors and to his Union.[6]  Then,

ruling on Gadson's motion in limine, plaintiff's First Amendment retaliation claim

was further narrowed because I found that his complaint to the NYC EAP in

September 2009 was not speech protected by the First Amendment.  His only

remaining claims concerned the Counseling Memoranda issued between June 15,

2009 and November 20, 2009, and the two Notices of Hearing issued on July 2,

2009 and February 2, 2010.

Trial commenced on November 28, 2011.  Plaintiff sought damages

against Gadson for her alleged acts of retaliation.  Plaintiff testified as to his

damages, stating that the presence of Counseling Memoranda in an employee's

---

[3]       *See id.* at 351-52, 353.

[4]       *See id.* at 352.

[5]       *See Dingle v. City of New York*, No. 10 Civ. 4, 2011 WL 2682110
(S.D.N.Y. July 7, 2011).

[6]       *See id.* at *5-6.

folder could be held against that employee for an eighteen-month period.  The

evidence also included notes made by plaintiff's psychotherapist during therapy

sessions, which reflected plaintiff's hope of obtaining two million dollars from this

lawsuit so that he never has to work again.  On December 8, 2011, the jury

rendered a verdict finding Gadson liable for the issuance of three of the five

counseling memoranda (June 15, 2009, July 8, 2009 and July 13, 2009) and the

two Notices of Hearing (July 2, 2009 and February 2, 2010).  The jury initially

awarded plaintiff nothing in damages but, upon further instruction from this Court,

awarded plaintiff one dollar in nominal damages.   The jury determined that the

three Counseling Memoranda and Notices were issued in retaliation for plaintiff

having engaged in protected speech and that Gadson would not have issued them

in the absence of plaintiff's protected speech.   The jury did not award any punitive

damages.

By letter dated December 19, 2011, plaintiff asked the Court to set

aside the jury award.  By letter dated December 27, 2011, plaintiff's counsel noted

that they had spoken with plaintiff about that letter; that plaintiff had sent this letter

to the Court without their knowledge; and that plaintiff wanted the Court to

disregard the letter in its entirety.

Plaintiff was on a leave of absence commencing June 28, 2010, and ending September 22, 2010.  Due to this leave of absence, the position of Superintendent at the Polo Grounds became vacant.  Accordingly, the NYCHA appointed someone else to that position. Because the Superintendent position at the Polo Grounds was filled by another employee, upon his return to work on September 23, 2010, plaintiff was assigned to King Towers, another NYCHA housing development also located in Manhattan.  Upon his assignment to King Towers, plaintiff was no longer under Gadson's supervision.

**B.     The Instant Motion for Attorneys' Fees and Costs**

Plaintiff seeks an award of attorneys' fees for the work of seven attorneys (based upon hourly rates of $300, $350 and $400) and six office staff (including four paralegals at the hourly rate of $125).  Plaintiff seeks $436,270.00 for 1,358.85 hours of work by seven attorneys and $17,762.50 for 142.10 hours of work by paralegals and law clerks.  In total, plaintiff requests attorneys' fees in the amount of $454,032.50.  Plaintiff also seeks an award of costs and expenses in the amount of $15,301.65.

## III.   LEGAL STANDARD

District courts are afforded considerable discretion in determining the amount of reasonable attorneys' fees in any given case.[7]   In addition, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[8]

### A.   Prevailing Party

A "prevailing party" in a civil rights action is entitled to an award of attorneys' fees and costs.[9]   Furthermore, a prevailing party is also entitled to reimbursement for time reasonably expended in preparing his attorneys' fee application.[10]   A "prevailing party" is a party who achieves a "'material alteration

---

[7]   *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (stating that district courts' discretion in awarding fees is not "unfettered"); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) ("The district court retains discretion to determine . . . what constitutes a reasonable fee.").

[8]   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[9]   *See* 42 U.S.C. § 1988(b) (stating that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in civil rights actions). *See also Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) ("Although a district court typically has wide discretion in choosing whether to deny attorneys' fees, . . . this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust.").

[10]   *See Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees.").

of the legal relationship of the parties'. . . ."[11]  In other words, "'plaintiffs may be

considered 'prevailing parties' for attorney's fees purposes if they succeed on any

significant issue in litigation which achieves some of the benefit the parties sought

in bringing suit.'"[12] Thus, "to qualify as a prevailing party, a civil rights plaintiff

must obtain at least some relief on the merits of his claim."[13]  Finally, "a plaintiff

who wins nominal damages is a prevailing party under § 1988" for purposes of

attorneys' fees.[14]

### B.     Lodestar

The aim of section 1988 "is to enforce the covered civil rights statutes,

not to provide 'a form of economic relief to improve the financial lot of

attorneys.'"[15]  Thus, "a 'reasonable' fee is a fee that is sufficient to induce a

capable attorney to undertake the representation of a meritorious civil rights

-----

[11]     *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 604 (2001) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).

[12]     *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley*, 461 U.S. at 433 (internal quotation marks and citation omitted)).

[13]     *Id.* at 111.

[14]     *Id.* at 112.

[15]     *Perdue v. Kenny*, 130 S. Ct. 1662, 1673 (2010) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("*Delaware Valley I*")).

case."[16]  The methodology to be used in determining the amount of attorneys' fees is the "lodestar" approach.  The Supreme Court has endorsed the "lodestar" approach as the superior method to be used in determining attorneys' fees, describing it as "'the guiding light of . . . fee-shifting jurisprudence.'"[17]  Moreover, there is a "strong" presumption that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective."[18]

The lodestar is the product of the attorneys' reasonable hourly rates multiplied by the reasonable number of hours worked by the attorneys.[19]  "The reasonable hourly rate is the rate a paying client would be willing to pay."[20]  In determining the reasonable hourly rates to be applied, courts should look to the

---

[16]     *Id.* at 1672 (citing *Delaware Valley I*, 478 U.S. at 565 ("[I]f plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied."); *Blum v. Stenson*, 465 U.S. 886, 897 (1984) ("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." (ellipsis, brackets, and internal quotation marks omitted))).

[17]     *Id.* (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (internal quotation marks and citation omitted)).  In *Perdue*, the issue was whether an attorney's fee award could be increased (enhanced) based on the attorney's superior performance.

[18]     *Id.* at 1673.

[19]     *See Millea*, 658 F.3d at 166.

[20]     *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).

market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[21]  In sum, in determining a reasonable hourly rate, courts "should bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."[22]

### C.    Proportionality

There is no rule requiring proportionality between the amount of fees requested and the damages recovered.  The Second Circuit has stated:

> While a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely.  Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel.  The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.  Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded.[23]

"Reasoning that a rule calling for proportionality between the fee and the monetary

---

[21]    *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum*, 465 U.S. at 896, n.11).

[22]    *Arbor Hill*, 522 F.3d at 190.

[23]    *Millea*, 658 F.3d at 169 (citation omitted, emphasis in original).

11

amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, [courts] have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation."[24]

### D.   Degree of Success

"'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff."[25]  "Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar."[26]  As recognized by the Supreme Court, where

> a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it

---

[24]   *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (citing cases).

[25]   *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar*, 506 U.S. at 114).

[26]   *Millea*, 658 F.3d at 168.

was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  Again, the most critical factor is the degree of success obtained.[27]

"Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."[28]  As stated by the Supreme Court in *Farrar*:

> In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all.  A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party.
>
> * * *
>
> When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.[29]

Justice O'Connor concurred with the *Farrar* judgment but wrote separately to further explain why an award of fees was not appropriate.

> When the plaintiff's success is purely technical or *de minimis*, no fees can be awarded.  Such a plaintiff either has failed to achieve victory at all, or has obtained only a

---

[27]    *Hensley*, 461 U.S. at 436.

[28]    *Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring).

[29]    *Farrar*, 506 U.S. at 115 (citation omitted).

Pyrrhic victory for which the reasonable fee is zero.[30]

Consequently, the Court held that

> when a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorney's fees. *Ante*, at [115] (court need not calculate presumptive fee by determining the number of hours reasonably expended and multiplying it by the reasonable hourly rate; nor must it apply the 12 factors bearing on reasonableness). As a matter of common sense and sound judicial administration, it would be wasteful indeed to require that courts laboriously and mechanically go through those steps when the *de minimis* nature of the victory makes the proper fee immediately obvious. Instead, it is enough for a court to explain why the victory is *de minimis* and announce a sensible decision to "award low fees or no fees" at all. *Ante*, at [115].[31]

Accordingly, the Supreme Court set forth the following three factors to determine whether a plaintiff who has obtained only nominal damages is nonetheless entitled to receive attorneys' fees: "[1] the difference between the judgment recovered and the recovery sought[,]"[32] "[2] the significance of the legal issue on which the plaintiff prevailed, and [3] the public purposes served" by the litigation.[33]

---

[30]   *Id.* at 117.

[31]   *Id.* at 117-18.

[32]   *Id.* at 121.

[33]   *Id.* at 122.

## IV.   DISCUSSION

### A.   Attorneys' Fees

There are several reasons that militate against an award of attorney's fees in this case. *First*, there is a substantial difference between the $1.00 in nominal damages plaintiff recovered against one defendant and the relief plaintiff initially sought in his Complaint against three defendants. In fact, initially the jury did not want to award plaintiff any amount of money in nominal damages. It was only after this Court instructed the jury that some amount of money, not to exceed one dollar, had to be awarded as nominal damages that the jury awarded plaintiff $1.00 in nominal damages. Moreover, the jury did not award plaintiff any compensatory or punitive damages. Nor did plaintiff obtain any declaratory or injunctive relief of any type – including a declaratory judgment, restraining order, or any other affirmative injunctive relief – at any point during this litigation. Plaintiff also did not obtain any advancement for positions he allegedly lost as a result of defendant's conduct.

Plaintiff argues that his case was always about more than just money and that he, in fact, initiated suit to protect his career.[34]  But plaintiff's reliance on *Local 32B-32J, Service Employees International Union, AFL-CIO v. Port*

---

[34]   *See* Memorandum of Law in Support of Plaintiff's Motion for Attorney's Fees and Costs ("Pl. Mem.") at 9.

*Authority of New York and New Jersey* for the proposition that an award of attorneys' fees is appropriate even where the plaintiff is awarded nominal damages is misplaced.[35]  In *Local 32B-32J*, the plaintiff obtained substantial injunctive relief,[36] thereby making that case distinguishable from the instant case.

Nonetheless, plaintiff argues that he obtained much of the relief originally requested in the ten categories listed in the "Wherefore" Clause of his Complaint.[37]  Plaintiff's first argument — that he never sought a substantial money damages award as one of the primary goals of this litigation – is belied by that very language of his Wherefore clause, which demanded the following items as part of the judgment against the defendants:

> 6.   All damages which Plaintiff has sustained as a result of Defendants' conduct, including back pay, front pay, punitive damages, general and special damages fro lost compensation and job benefits he would have received but for Defendants' conduct, and for emotional distress, humiliation, embarrassment, foreclosure of liberty and anguish; and

---

[35]   180 F.R.D. 251 (S.D.N.Y. 1998).

[36]   *See id.* at 253 (stating that the injunctive relief imposed as to the Port Authority "provides plaintiffs with a remedy for discriminatory treatment beyond any offered by defendants before the trial").

[37]   *See* Pl. Mem. at 7-9.

> 8.      Exemplary and punitive damages in an amount
>         commensurate with Defendants' ability and so as to
>         deter future malicious, reckless and/or intentional
>         conduct[.]

Plaintiff's expectation of substantial money damages is further evidenced by the

statements he made to his psychotherapist (that he hoped for a two million dollar

recovery) and the December 19, 2011 post-verdict letter he sent to the Court

seeking to set aside the jury award which he describes as "a terrible miscarriage of

justice."[38]  In that letter, plaintiff states:

> I truly believe that I was not only victimized by Ms.
> Gadson but by the jury as well.  The jury apparently did not
> understand how to reasonably address the issue of my
> damages and so they denied me both compensatory and
> punitive damages.[39]

In addition to not restoring plaintiff's accrued pay, the jury award "did not

compensate [him] for [his] medical expenses, witness fees, emotional distress,

physical injury, being sick 90 day lost wage, lost wages and out of pocket expenses

as well."[40]  Plaintiff states that the jury's refusal to award punitive damages "allows

Ms. Gadson to continue to misuse her authority, violate laws and show a total

---

[38]     Ex. F to the Declaration of Jeffrey Neiderhoffer in Opposition to
Plaintiff's Motion for Attorney's Fees and Costs, dated February 10, 2012
("Neiderhoffer Decl.").

[39]     *Id.* at 1.

[40]     *Id.* at 1-2.

disregard for a person['s] constitutional right."[41]  Thus, plaintiff's expectation of a

substantial award of money damages could not be any clearer.[42]

        Plaintiff's claim that he successfully obtained much of the original

relief requested in the Wherefore Clause does not withstand scrutiny.  For example,

paragraph two of the Wherefore Clause specifically requested "[a] judgment

declaring that the practices complained of herein are unlawful and in violation of

the aforementioned laws protected by the United States Constitution as well as

New York State."[43]  Plaintiff argues that he "obtained that result as it pertained to

five (5) separate and distinct employment practices that Gadson took against him,

---

[41]     *Id.* at 2.

[42]     Plaintiff makes much of the fact that nowhere in his Complaint is
there a request for a specific dollar amount of damages.  *See* Pl. Mem. at 9.  Nor
did plaintiff request a specific dollar amount during the trial.  *See id.*  Yet plaintiff
did not withdraw his claim for compensatory damages as evidenced by the fact that
the jury charge contains an entire section devoted to damages, to which plaintiff
did not object or ask that it be withdrawn during the charge conference or at any
other point in time.  The fact that plaintiff did not formally request a specific dollar
amount is, therefore, not dispositive with regard to the first *Farrar* inquiry
(damages sought versus damages obtained).  *See Caruso v. Forslund*, 47 F.3d 27,
32 (2d Cir. 1995) (refuting plaintiff's argument that because she sought no
compensatory damages, her award of nominal damages was not a technical victory,
stating that "[t]his argument fails because, contrary to plaintiff's contention before
this court, damages were sought in this case").

[43]     Wherefore Clause ¶ 2.

an unquestionably successful result."[44]  However, plaintiff is confusing the *practices* of unlawful retaliation with *instances* of such retaliation.  The jury's verdict merely identified five instances of adverse employment actions where Gadson engaged in unlawful First Amendment retaliation.  The jury's verdict said nothing about the practices complained of by plaintiff, which were allegedly perpetrated under color of state law, and include the following: (1) the making of baseless, negative reports by defendant Gadson in retaliation for plaintiff's engagement in protected speech;[45] (2) the taking of adverse employment actions against plaintiff in retaliation for such protected activity;[46] and (3) the failure to instruct, supervise, control and discipline defendant Gadson so she would refrain from unlawfully and maliciously retaliating against plaintiff.[47]  Accordingly, plaintiff did not receive the type of declaratory relief he initially requested.

Nor did plaintiff receive any "advancement for lost positions" given that  five specific adverse employment actions taken against him have been adjudged unconstitutional.[48]  Plaintiff further argues that he received the relief

---

[44]     Pl. Mem. at 7.

[45]     *See* Complaint ¶ 98.

[46]     *See id.* ¶ 99.

[47]     *See id.* ¶ 100.

[48]     Wherefore Clause ¶ 3.

requested in paragraph seven in that the "five (5) separate and discrete disciplinary actions placed in Plaintiff's personnel file have effectively been nullified and will no longer have an effect on the remainder of Plaintiff's career."[49]

Plaintiff's argument that the jury's verdict effectively nullified the three Counseling Memoranda and two Notices of Hearing is nothing but a transparent attempt to obscure the disparity between the relief initially sought and the relief actually obtained. It is not because of the jury's determination of liability that the Counseling Memoranda and Notices will no longer have any effect on the remainder of plaintiff's career. Rather, as plaintiff himself testified, the age of these documents renders them essentially harmless.[50] The three Counseling Memoranda and the two Notices were all issued more than eighteen months prior to the jury's verdict on December 8, 2011. Thus, the jury's finding of five instances of retaliation, all of which were more than eighteen months old, had no effect on the remainder of plaintiff's career. Accordingly, plaintiff did not obtain the benefits sought in paragraphs three and seven of the Wherefore Clause.

---

[49]    Pl. Mem. at 9.

[50]    *See* Trial Transcript ("Tr.") at 612 ("If you have counseling memos in folders for anywhere within an 18-month period it could be held against you when they're considering you for promotion.").

Plaintiff also claims that he obtained the relief requested in paragraph four of the Wherefore Clause given his transfer to a different NYCHA building upon his return from his leave of absence on September 23, 2010.  But plaintiff offers no proof that he was transferred from the Polo Grounds to the King Towers as a result of this lawsuit.  Rather, plaintiff's previous position as Superintendent of the Polo Grounds was left vacant when he took his leave of absence on June 28, 2010.  Plaintiff's position was therefore filled by another employee and, hence, was no longer available to plaintiff upon his return.  Plaintiff was assigned the Superintendent position at a different building, the King Towers, when he returned from his leave.  His transfer was a result of necessity, rather than a result of the instant litigation.

Furthermore, the vindication of plaintiff's First Amendment right to free speech is of little significance in light of the fact that his retaliation claim was considerably narrowed as a result of the rulings on the summary judgment motion and defendant's motions in limine.  Ultimately at issue was the potential liability of one individual defendant with regard to the issuance of six Counseling Memoranda and two minor disciplinary proceedings.   Yet out of these eight instances of alleged retaliation, the jury found for plaintiff with regard to only five such incidents, further undercutting plaintiff's success.

> If recovering one dollar from the least culpable defendant and nothing from the rest legitimately can be labeled a victory . . . surely it is a hollow one.  [Plaintiff] may have won a point, but the game, set, and match all went to the defendants.[51]

Indeed, this case established no new law but instead involved the application of settled law to the facts of the case.  Thus, this litigation accomplished very little "other than occupying the time and energy of counsel, court, and client."[52]

Finally, the verdict in plaintiff's favor did not accomplish any laudable public goal or broader purpose as evidenced, in part, by the jury's decision to not award punitive damages.  Plaintiff argues to the contrary, stating that his case implicated matters of public concern, *e.g.*, alleged chronic understaffing at the Polo Grounds, and that the NYCHA supervisors were forced to listen to his complaints as well as Gadson's purported admission of criminal misconduct.  Yet plaintiff did not receive redress for any of these matters.  Simply put, there is no basis here, legally or factually, in support of plaintiff's argument that the jury's verdict will have any significance on anyone other than the parties to this action.[53]

---

[51]     *Farrar*, 506 U.S. at 121.

[52]     *Id.* at 121-22.

[53]     *Adams v. Rivera*, 13 F. Supp. 2d 550, 553 n.5 (S.D.N.Y. 1998) (recognizing "the public interest in encouraging injured parties to vindicate their civil rights" but stating that "there is also a public interest in preventing dubious or trivial claims from flooding the federal courts").

In sum, plaintiff obtained virtually nothing from the jury's verdict other than the satisfaction of knowing that he was right with regard to five incidents of retaliation by Gadson. Thus, the fact that he received only nominal damages against one individual defendant proves fatal to his request for attorneys' fees.[54]

> [H]olding that any award of nominal damages renders the victory material would render the concept of *de minimis* relief meaningless. Every nominal damage award has as its basis a finding of liability, but obviously many such victories are Pyrrhic ones.[55]

Unfortunately, this type of symbolic victory does not support any award of attorneys' fees, much less an award in the amount of $454,032.50.

### B.     Costs

A prevailing party may be entitled to recover reasonable out-of-pocket expenses (costs) incurred during the litigation.[56] Generally, recoverable costs include items such as duplicating, postage and court fees; items which are not

---

[54]     *See Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir. 1996) ("In short, while there is no *per se* rule that a plaintiff recovering nominal damages can never get a fee award, *Farrar* indicates that the award of fees in such a case will be rare.").

[55]     *Farrar*, 506 U.S. at 120 (quotation marks and citations omitted).

[56]     *See United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987).

associated with an attorney's "nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate."[57]

Because the discussion in *Farrar* was basically cabined to attorneys' fees and did not separately address costs, an issue arises as to whether this Court can award costs, without awarding attorneys' fees, where a plaintiff received only nominal damages. The answer can be found in Federal Rule of Civil Procedure 54(d)(1) which states: "Unless a federal statute, these rules, or a court order provides otherwise, costs – – other than attorney's fees – – should be allowed to the prevailing party." There are cases where Rule 54(d) costs have been awarded to a party who recovered only nominal damages.[58] Furthermore, the language of section 1988 buttresses this conclusion in that it permits a court to award a reasonable attorneys' fees as part of the costs to be awarded.[59] Because attorneys' fees are a component of awardable costs, it stands to reason that costs other than attorneys' fees can be awarded even if attorneys' fees are denied. Accordingly,

---

[57]     *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987).

[58]     *See, e.g., LaBounty v. Rivera*, No. 95 Civ. 2617, 1999 WL 1129063, at *8 (S.D.N.Y. Dec. 8, 1999) (stating that "an award of nominal damages allows a plaintiff to recover costs as the 'prevailing party'"); *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1321 (11th Cir. 2001).

[59]     *See* 42 U.S.C. § 1988(b) (stating that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs").

plaintiff is awarded $12,359.15 in out-of-pocket, taxable costs, which represents the total requested of $15,301.65 reduced by $2,942.50, which are the costs identified by defendant as either unaccounted for or unwarranted to which plaintiff did not reply.[60]

## V.   CONCLUSION

For the foregoing reasons, plaintiff's motion for an award of attorneys' fees is denied while his motion for costs is granted.  Plaintiff is therefore awarded $12,359.15 in costs but no attorneys' fees.  The Clerk of the Court is directed to close plaintiff's motion for attorneys' fees and costs (Docket Entry # 96).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 17, 2012

_____

[60]      *See* Neiderhoffer Declaration ¶ 32.

25

**- Appearances -**

**For Plaintiff:**

Alexander T. Coleman, Esq.
Borelli & Associates, P.L.L.C.
1 Old Country Road, Suite 347
Carle Place, NY 11514
(516) 248-5550

**For Defendant:**

Jeffrey Niederhoffer
Of Counsel to the New York
 City Housing Authority
250 Broadway, 9th Floor
New York, NY 10007
(212) 776-5259